
**This order is SIGNED.**

Dated: January 17, 2018



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>THEODORE WILLIAM WHITE, JR. AND PORSCHA SHIROMA,<br><br>Debtors. | Bankruptcy Number: 14-25727<br><br>Chapter 7 |
| J. KEVIN BIRD, an Individual,<br><br>Plaintiff,<br>vs.<br><br>LYNN E. WARDLEY, an Individual, and AMERICAN BENEFITS COMPANY, INC.,<br><br>Defendants. | Adversary Proceeding No. 16-02089<br><br>Hon. Kevin R. Anderson |

### MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (PRESUMPTION OF INSOLVENCY)

Theodore William White, Jr. ("White" or the "Debtor") and Porscha Shiroma filed a voluntary Chapter 7 bankruptcy petition on May 30, 2014. J. Kevin Bird was appointed as the Chapter 7 Trustee ("Trustee"). The Trustee filed this adversary proceeding against Lynn E. Wardley ("Wardley") and American Benefits Company, Inc. on May 30, 2016, and amended his

complaint on September 15, 2017.[1] The Amended Complaint seeks to recover allegedly fraudulent transfers from the Debtor under 11 U.S.C. §§ 544, 550, and the Utah Uniform Fraudulent Transfer Act ("UUFTA").[2] The transactions in question involve two transfers of $750,000 each from White to Wardley in July of 2011.

The Trustee has filed this Motion for Partial Summary Judgment[3] arguing under Utah Code Ann. § 25-6-3(2)[4] that the Debtor is "presumed to be insolvent" at the time of the transfers because he was "generally not paying his debts as they [became] due."

The Court held a hearing on the Trustee's Motion for Partial Summary Judgment on January 9, 2018. The Court has reviewed the briefing, including the exhibits attached to the Trustee's Motion, and has conducted its own independent research of applicable law. For the reasons set forth in this memorandum decision, the Court denies the Trustee's Motion for Partial Summary Judgment.

I.   **JURISDICTION AND VENUE**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(a) & (b) and § 157(b). The Trustee's Motion for Partial Summary Judgment is a core proceeding under 28 U.S.C. § 157(b)(2)(H). Venue is appropriate in this District under 28 U.S.C. § 1408 and § 1409, and notice of this hearing was properly given to all parties in interest.

---

[1] Dkt. No. 46. Hereinafter, all references to the docket will be in Case No. 16-2089 unless otherwise specified.
[2] *Id.*
[3] Dkt. No. 61.
[4] The Trustee filed the Adversary Proceeding on May 30, 2016. The Court will reference the Utah Uniform Fraudulent Transfer Act using the statute numbering system as it existed on the date the complaint was filed.

## II.    GENERAL NATURE OF THE DISPUTE AND UNDISPUTED FACTS

To prevail on his complaint, the Trustee must establish the Debtor's insolvency at the time of the transfers. The Trustee's Motion for Partial Summary Judgment seeks to establish a presumption of insolvency and shift the burden to Wardley under Utah Code Ann. § 25-6-3(2) based on the assertion that the Debtor was "generally not paying his debts as they [became] due . . . ." To determine whether the Debtor was insolvent at the time of the transfers, the parties agree that the relevant time period is from February 2011 through July 2011 (the "Relevant Period").

The following factual statements from the Trustee's Motion[5] and Wardley's Memorandum in Opposition[6] are undisputed:

1. In his Schedules, the Debtor identified at least $328,714.68 in non-priority, undisputed, non-contingent, liquidated, unsecured debt that he incurred before 2011 and that remained unpaid when he filed bankruptcy on June 13, 2014.[7]

2. 9-11 months prior to the formation of ABC Club, LLC ("ABC Club"), which occurred in December 2010 (see facts below), the Debtor's finances were going through a "tough stretch."[8]

3. For example, the Debtor's Lincoln Navigator was repossessed in June 2010, and a Chevrolet Corvette was repossessed in September 2010.[9]

4. In December 2010, the Debtor and Wardley agreed to form an entity called ABC Club LLC ("ABC Club"). Wardley began to make substantial loans to ABC Club, and the Debtor began to run the day-to-day affairs of ABC Club for which he received a salary or draw of funds from ABC Club.[10]

---

[5] Dkt. No. 61.
[6] Dkt. No. 68.
[7] Dkt. No. 68, ¶ 3.
[8] Dkt. No. 61, Ex. B, Dep. of Theodore William White Jr. at 82, lines 14; 19.
[9] Dkt. No. 61, Ex. B, Dep. of Theodore William White Jr. at 94, lines 14-15; Dkt. No. 68, Ex. 2, Notice of Our Plan to Sell Property dated Sept. 27, 2010; Dkt. No. 68, Ex. 3, Case Form Letter, AAA Lenders Investigation & Recovery dated June 4, 2010 (handwritten note produced by the Debtor stating "took Navigator Lincoln 6/7/2010").
[10] Dkt. No. 68, Ex. 4, Decl. of Lynn E. Wardley at ¶ 2; Dkt. No. 68, Ex. 1, Dep. of Theodore William White Jr. at 205, lines 3-7).

5. From January 2011 through September 2011, which includes the Relevant Period, ABC Club paid the Debtor at least $235,000 amounting to a draw or salary of approximately $26,000 a month.[11]

6. The Debtor used the salary from ABC Club to pay outstanding bills as best he could.[12]

7. Regarding his payment of debts during the Relevant Period, the Debtor testified: "I paid the monthly bills, the rent, the mortgage, but we went through a very tough time. Prior to losing everything [prior to the Relevant Period], we had vehicles, boats, those type of things."[13]

8. During the Relevant Period, the Debtor had a "house full of furniture."[14]

9. The Debtor was making payments on a boat during the Relevant Period, and the boat had not been repossessed as late as December 2011, which is six months *after* the Relevant Period.[15]

10. The Debtor testified,[16] and "the Trustee concedes that the Debtor did not lose possession of his residence for non-payment of rent until after the dates of the transfers …."

11. The Relevant Period ended in July 2011, with the Debtor continuing to receive money from ABC Club through September 2011. Nonetheless, the Debtor did not commence his Chapter 7 bankruptcy case until May 30, 2014 – almost three years after the time the Trustee alleges the Debtor could not pay his debts as they came due.[17]

---

[11] Dkt. No. 68, Ex. 4, Decl. of Lynn E. Wardley at ¶ 3.

[12] Dkt. No. 68, Ex. 1, Dep. of Theodore William White Jr. at 77, lines 16-20 ("Yeah, I only had what I had with ABC Club before – I mean, that was my income – my advance for coming in was $20,000 a month, it went in and it paid the bills, and tried to catch up on a lot of bills that were owed as best I could."); Dep. of Theodore William White Jr. at 78, lines 10-21 ("My money came in, and I paid bills, and I was trying to stay afloat …. It was no money in accounts, stretched out for 11 months, having to sell everything you have to pay the bills [all prior to the Relevant Period], and then we did the deal [with Wardley to start ABC Club], and I have got $20,000 coming in a month, and I paid my bills."); Dep. of Theodore William White Jr. at 78, lines 20-23 ("[A]nd I have got $20,000 coming in a month, and I paid my bills … as best I could.").

[13] Dkt. No. 68, Ex. 1, Dep. of Theodore William White Jr. at 71, lines 4-8.

[14] Dkt. No. 68, Ex. 1, Dep. of Theodore William White Jr. at 81, lines 4-14 (testifying that he lost his house and furniture "[r]ight after the settlement money was gone" which is after the relevant period); Dep. of Theodore William White Jr. at 81-82, lines 19-10.

[15] Dkt. No. 68, Ex. 6, Commerce Bank Loan Statement, dated February 2011 through December 2011, TW1760, TW1763-64, TW1768, TW1770-76; Dkt. No. 68, Ex. 1, Dep. of Theodore William White Jr. at 120, lines 15-18 (identifying Dep. Ex. 2012, a Commerce Loan Statement from Commerce Bank re Loan No. 33900100699890001, as statement for the boat).

[16] Dkt. No. 72; Dkt. No. 68, Ex. 1, Dep. of Theodore William White Jr. at 81, lines 4-14.

[17] Dkt. No. 68, Ex. 4, Decl. of Lynn E. Wardley at ¶ 3; Dkt. No. 72.

4

### III. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(a), as incorporated into bankruptcy proceedings by Fed. R. Bankr. P. 7056, the Court is required to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[18] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[19] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[20]

The moving party bears the burden to show that it is entitled to summary judgment,[21] including the burden to properly support its summary judgment motion as required by Rule 56(c).[22] If the moving party has failed to meet its burden, "summary judgment must be denied," and the nonmoving party need not respond because "no defense to an insufficient showing is required."[23] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[24] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[25]

---

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[19] *Id.*
[20] *Id.* at 249.
[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[22] *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).
[23] *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).
[24] *Concrete Works of Colorado, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).
[25] *Celotex*, 477 U.S. at 324.

When considering a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party,[26] but the Court does not weigh the evidence or make credibility determinations.[27]

## IV.  UTAH UNIFORM FRAUDULENT TRANSFER ACT

One of the elements necessary to prove a transfer is fraudulent within the meaning of the UUFTA is that the "debtor was insolvent at the time or became insolvent as a result of the transfer or obligation."[28]

Section 25-6-3 provides two definitions of "insolvent." Under Utah Code Ann. § 25-6-3(1), a "debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Under Utah Code Ann. § 25-6-3(2) "a debtor who is generally not paying his debts as they become due is presumed to be insolvent." It is this section under which the Trustee is seeking a summary judgment determination.

The Official Comment to the Uniform Fraudulent Transfer Act, which statutory language was adopted in the Utah Code, provides the following guidance in determining whether a debtor is generally not paying his debts as they become due:

> [T]he court should look at more than the amount and due dates of the indebtedness. The court should also take into account such factors as the number of the debtor's debts, the proportion of those debts not being paid, the duration of the nonpayment, and the existence of bona fide disputes or other special circumstances alleged to constitute an explanation for the stoppage of payments. The court's determination may be affected by a consideration of the debtor's payment practices prior to the period of alleged nonpayment and the payment practices of the trade or industry in which the debtor is engaged.[29]

---

[26] *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1279 (10th Cir. 2013) (citation omitted).
[27] *Nat'l Am. Ins. Co. v. Am. Re–Insurance Co.*, 358 F.3d 736, 742–43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).
[28] Utah Code Ann. § 25-6-6(1)(b).
[29] UFTA, § 2(b), Cmt. 2.

Applicable caselaw augments this comment by suggesting that a court consider "(1) the number of debts; (2) the amount of delinquency; (3) the materiality of non-payment; and (4) the nature of the debtor's conduct of its financial affairs."[30]

Thus, establishing insolvency based on a debtor's non-payment of debts requires evidence as of the time of the alleged fraudulent transfers regarding the number of debts, the specific debts not being paid, and the amount of the delinquency.[31]

## V. ANALYSIS

The Trustee asserts that summary judgment is appropriate because there is no genuine dispute as to any material fact that the Debtor was generally not paying his debts as they became due during the Relevant Period. The Trustee asserts two categories of evidence in support of the motion: (1) the amount of debt incurred pre-2011 and that remained unpaid as of the 2014 petition date; and (2) the Debtor's deposition testimony.

It is indeed undisputed that as of the petition date in May of 2014, the Debtor owed at least $328,714.68 in debt that was incurred before 2011. However, there is no evidence as to the delinquent amount of any specific debt during the Relevant Period. Thus, while this evidence provides the Court with the number of debts, it does not inform the Court as to the amount, proportion, and materiality of unpaid bills as of the Relevant Period.

Further, the Debtor's deposition testimony fails to fill these evidentiary gaps necessary to establish his insolvency. The Debtor testified that he had a "very tough time" prior to the formation of ABC Club in December 2010; however, it is undisputed that from January through

---

[30] *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008).
[31] *See Xeta Corp. v. Canton Indus. Corp.*, 132 F.3d 44 (10th Cir. 1997) (unpublished) (insolvency established when debtor's answer to interrogatories admitted it "had debts owing in excess of $1 million and that every debt listed was 'past due and in arrears.'"); *Janvey v. Dillon Gage, Inc. of Dallas*, 856 F.3d 377, 387 (5th Cir. 2017) (recognizing that presumption of insolvency required evidence as to specific, unpaid bills during the relevant period).

September 2011, the Debtor received an average of $26,000 per month from ABC Club for a total of $235,000 over a period of nine months. The Debtor further testified that after he began receiving income from ABC Club, he used that money to pay his bills as best he could. Based on the undisputed Debtor's receipt of $26,000 per month during the Relevant Period, coupled with the Debtor's testimony that he was paying his bills as best he could, the Court cannot conclude on summary judgment that the Debtor was not paying his debts as they became due during the Relevant Period.

The Trustee also argues that the repossession of two cars some months before the Relevant Period, and the repossession of a boat and loss of the Debtor's residence after the Relevant Period is further evidence of the Debtor's inability to pay his debts. However, the cars were repossessed during the Debtor's "tough stretch" consisting of the nine to eleven months before he started receiving income from ABC Club. The boat was repossessed approximately five months after the alleged fraudulent transfers, and the Debtor had to move to another home after such transfers. As a result, the Court cannot conclude from the repossession or loss of these assets that the Debtor was not paying his debts as they came due.

**VI.    CONCLUSION**

In short, the Court does not have sufficient undisputed evidence to conclude as a matter of law that the Debtor was not paying his debts as they came due specifically during the Relevant Period. Thus, the presumption of insolvency does not shift to Wardley, and the Trustee will need to establish this element with additional evidence at another time. The Court will issue an order contemporaneous with this decision denying the Trustee's Motion for Partial Summary Judgment.

_____END OF DOCUMENT_____

_____ooo0ooo_____

**DESIGNATION OF PARTIES TO RECEIVE NOTICE**

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Adam S. Affleck     asa@pyglaw.com, debbie@princeyeates.com;docket@princeyeates.com;andalin@princeyeates.com
- Troy J. Aramburu     taramburu@swlaw.com, nharward@swlaw.com,docket_slc@swlaw.com,sballif@swlaw.com
- Bret R Evans     brevans@swlaw.com, nharward@swlaw.com;docket_slc@swlaw.com
- Tessa Meyer Santiago     tms@lincolnlaw.com, lincolnlaw.tms@gmail.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

None.